```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GEORGINA KRACUN,

                  Plaintiff,              04 Civ. 5388 (MGC)

     - against -                          MEMORANDUM OPINION

The UNITED STATES; TOM RIDGE, as
Secretary of the Department of
Homeland Security; JOHN ASHCROFT, as
Attorney General of the United
States, United States Department of
Justice; MARY ANN GANTNER, as
District Director of the US Bureau
of Citizenship & Immigration Services
(formerly known as the Immigration
& Naturalization Service); A. GILLES,
as Supervisory District Adjudications
Officer, New York District,

                  Defendants.
------------------------------------X

APPEARANCES:

          LEE & TAPALAGA, LLP
          Attorneys for Plaintiff
          36 West 44th St., Suite 812
          New York, NY 10036

          By:  Gabriel Tapalaga, Esq.


          MICHAEL J. GARCIA
          United States Attorney for the
          Southern District of New York
          Attorneys for Defendants
          86 Chambers Street, 4th Floor
          New York, New York 10007

          By:  F. James Loprest, Jr., Esq.
```

1

**CEDARBAUM, J.**

Georgina Kracun, a native of the former Yugoslavia, filed this action to compel the government to issue her a visa and adjust her status in the United States to lawful permanent resident. The government has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join as an indispensable party the Department of State, which has the exclusive power to issue visas. For the following reasons, the government's motion to dismiss is granted.

BACKGROUND

Kracun was randomly selected for the diversity immigrant visa program ("DV program") for fiscal year 2001, and submitted to the New York District Office of the former Immigration and Naturalization Service ("INS") an application to adjust her status in the United States to lawful permanent resident. As part of the application process, Kracun was fingerprinted in the New York District Office on September 25, 2001 and interviewed by an immigration officer on September 27, 2001. The fiscal year ended on September 30, 2001.

By letter dated October 4, 2001, the INS informed Kracun that her application to adjust her status had been denied -- not on the merits, but on the ground that she was ineligible to receive an immigrant visa because her fingerprints had not

2

cleared before the September 30, 2001 deadline for adjudicating cases under the 2001 DV program.  Following the denial, Kracun's attorneys wrote to the INS in attempts to revive her application.  They argued that Section 422 of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (2001) (the "Patriot Act"), extended the time to adjudicate her application to    April 1, 2002.

Kracun alleges that over the course of the next two years, the INS mishandled her application and misled her into believing that the application was, in fact, still pending.  In a letter dated April 27, 2004, however, in response to an inquiry from Kracun's counsel, the government pointed out that Kracun's application had been denied on October 4, 2001, and further stated that "[t]he decision taken in this matter was appropriate and will not be reversed."  On July 12, 2004, Kracun filed this lawsuit to compel the government to issue her a visa and adjust her status to lawful permanent resident.  Although she also seeks to enjoin the government from removing her from the United States, there is no allegation in the complaint or any indication in the record that the government has initiated, or even contemplates, removal proceedings against her.

DISCUSSION

The government has moved to dismiss the complaint on a number of grounds, the most compelling of which is that Congress has precluded the only relief Kracun seeks: an immigrant visa. The unambiguous language of 8 U.S.C. § 1154(a)(1)(I)(ii)(II) provides: "Aliens who qualify, through random selection, for a visa under [the DV program, 8 U.S.C. § 1153(c)] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." Thus, even if the government were to adjudicate Kracun's application on the merits, the statute makes clear that she is no longer eligible to receive a visa under the 2001 DV program.

This is a harsh result, because it appears that it was the dilatory and confused conduct of government agencies that prevented the issuance of a visa within the statutory period, and because a number of the 55,000 visas available under the 2001 DV program were never issued. Nevertheless, the weight of authority supports the conclusion that where a plaintiff files suit after the expiration of the DV program for which the plaintiff was selected, a court lacks power to direct the issuance of a visa under that expired program. See, e.g., Coraggioso v. Ashcroft, 355 F.3d 730, 733-34 (3d Cir. 2004); Ahmed v. Dep't of Homeland Sec., 328 F.3d 383, 384, 387-88 (7th Cir. 2003); Nyaga v. Ashcroft, 323 F.3d 906, 914-16 (11th Cir. 2003); Iddir v. Immigration and Naturalization Serv., 301 F.3d 492, 494, 500-01

4

(7th Cir. 2002); Vladagina v. Ashcroft, No. 00 Civ. 9456 (DAB), 2002 WL 1162426, at *2-3 (S.D.N.Y. Apr. 8, 2002), appeal dismissed, Vladagina v. Reno, No. 02-6120, 2004 WL 1638248 (2d Cir. Apr. 21, 2004); El Hindi v. McElroy, No. 99 Civ. 6110 (JSM), 2000 WL 1053873, at *1 (S.D.N.Y. July 31, 2000); see also Carrillo-Gonzalez v. Immigration and Naturalization Serv., 353 F.3d 1077, 1079 (9th Cir. 2003).

Kracun has offered no argument that permits a different result. The Patriot Act did not extend the time for INS to adjudicate her application for adjustment of status. Section 422(c)(1) of the Patriot Act provides:

> WAIVER OF FISCAL YEAR LIMITATION.- Notwithstanding section 203(e)(2) of the Immigration and Nationality Act (8 U.S.C. 1153(e)(2)), an immigrant visa number issued to an alien under [8 U.S.C. § 1153(c)] for fiscal year 2001 may be used by the alien during the period beginning on October 1, 2001, and ending on April 1, 2002, if the alien establishes that the alien was prevented from using it during fiscal year 2001 as a direct result of a specified terrorist activity.

Kracun was never "issued" an immigrant visa number under the 2001 DV program. She points to an internal INS document that shows a visa package was requested on her behalf on September 26, 2001, but the visa was returned unused and she was denied an adjustment of status on October 4, 2001. In fact, Kracun received the denial letter before the Patriot Act was signed into law on October 26, 2001. Even assuming the Patriot Act applied to Kracun's application, however, the extension provided by the

5

statute expired on April 1, 2002 -- more than two years before she filed this action.

After oral argument on September 13, 2005, Kracun submitted an alternative request for relief, a declaration by the court that she be "deem[ed] . . in 'lawful status.'" According to Kracun, such a declaration will enable her to apply to adjust her status in the future through an offer of employment or through another DV program, and will avoid the imposition of a three or ten year bar to re-entry into the United States under 8 U.S.C. § 1182(a)(9)(B)(i).

In support of her request, Kracun relies on a single case from the District of Oregon, Mart v. Beebe, No. 99 Civ. 1391, 2001 WL 13624 (D. Or. Jan. 5, 2001), in which Veronica Mart and her family, who were randomly selected to participate in the 1999 DV program, sought, among other things, review of the INS's decision to deny her application for an adjustment of status, and a declaration that they were not statutorily ineligible to adjust in the event they were randomly selected in the future for another DV program. Id. at *1, *2. Specifically, the Marts challenged the INS's interpretation of 8 U.S.C. § 1255(c)(2), id. at *1, *4, which provides in relevant part that an adjustment under 8 U.S.C. § 1255(a) -- the same provision under which Kracun seeks to adjust here -- "shall not be applicable to . . . an alien . . . who has failed (other than through no fault of his

6

own or for technical reasons) to maintain continuously a lawful status since entry into the United States." The court agreed with the plaintiffs that, contrary to the INS's finding, the lapse in their lawful status was excusable as a mere technical violation because they "were unaware of their duty to keep their non-immigrant visas current while awaiting the INS'[s] decision on their [earlier] request for asylum." Mart, 2001 WL 13624, at *5. The court held that the INS had abused its discretion in finding the plaintiffs ineligible for adjustment because of the lapse. Id.

Unlike the plaintiffs in Mart, however, Kracun was not denied adjustment because of a failure to maintain a lawful status in the United States. Should she apply again for adjustment and be denied on that ground in the future, there is nothing to prevent her from arguing, as she does here, that the lapse occurred through no fault of her own. To the extent that she seeks to preclude such a possible denial in advance, the opinion she requests is advisory and beyond the power of a federal court.

\*\*\*

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss must be granted.

SO ORDERED.

Dated:   New York, New York
         September 23, 2005

                              S/ _____
                                 MIRIAM GOLDMAN CEDARBAUM
                                 United States District Judge